BECKWITH, Associate Judge,
with whom WASHINGTON, Chief Judge, and EASTERLY, Associate Judge, join, dissenting:
By the time Officer Brown arrived at the scene on Ingraham Street, Officer Alto had already detained appellant David Lewis for driving with a suspended license, and Brittney Gibbs, Mr. Lewis’s passenger, had already handed over and claimed ownership of the half-full bottle of tequila Offi *252 cer Alto spotted in the car’s center console. Though the officers had probable cause to arrest Ms. Gibbs for possession of an open container, they did not arrest her. They searched the car instead. Officer Alto was considering letting Ms. Gibbs drive the car away, so he wanted Officer Brown “to check the vehicle for other open containers of alcohol” and. to “make sure there’s no other contraband in the vehicle.”
While Ms. Gibbs sat unrestrained on the police cruiser’s bumper, Officer Brown opened the front passenger door and began her search. After she smelled manjúa^ na, saw a plastic cup with alcohol in it on the floor, and found a marijuana cigarette in the passenger door handle, she kept searching. It was not until Officer Brown unzipped a Nike bag in the back seat and discovered a handgun that she decided to arrest Ms. Gibbs, who was still unrestrained and “standing outside the car.” Officer Brown. then conducted a true search incident to Ms, Gibbs’s actual arrest, recovering “a. bag of marijuana that she had stuffed in her bra.”
The search of Mr; Lewis’s car was not a search incident to arrest as this court or the Supreme Court has ever conceived of that exception to the warrant requirement.
The search was not incident to Mr. Lewis’s'arrest: he was handcuffed at the time of the search and the police had no reason to think they would find evidence of the offense of driving with a suspended license in the car. See Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (identifying the rationales justifying the search-incident-to-arrest exception—disarming the suspect and securing evidence related to the. offense of arrest that the suspect might destroy); Arizona v. Gant, 556 U.S, 332, 343, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) (holding that “circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is ‘reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle’ ”) (citation omitted).
Nor was the search somehow incident to Ms. Gibbs’s eventual arrest. If anything, it was the officers’ decision not to arrest Ms. Gibbs that gave rise to their need to search'Mr. Lewis’s car, because, as Officer Brown testified, Ms. Gibbs “wasn’t under arrest and the car wasn’t impounded,” so “she could have driven away” with contraband in the car. The search had nothing tó do with disarming an arrestee or preventing her from destroying evidence related to an offense of arrest, see Chimel, 395 U.S. at 763, 89 S.Ct. 2034, and it was only after the search turned up a gun that Officer Brown decided to arrest Ms. Gibbs after all.
Such an investigative search, untethered in every respect from an actual arrest, runs contrary to the basic Fourth Amendment principle that “conducting a Chimel search is not the Government’s right; it is an exception—justified by necessity—to a rule that would otherwise render the search unlawful.” Thornton v. United States, 541 U.S. 615, 627, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) (Scalia, J., concurring). Officer Brown’s wait-and-see approach to Ms. Gibbs’s arrest involved the type of “rummaging] at will” that the Supreme Court has sought to protect against, see Chimel, 395 U.S. at 767, 89 S.Ct. 2034, and this search of Mr. Lewis’s car, “conducted outside the judicial process, without prior approval by judge or magistrate,” was not reasonable under the Fourth Amendment, Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
And yet the majority opinion upholds Officer Brown’s investigative pre-arrest search because, in its view, it is a “Gant evidence search” that satisfies the majority’s new five-part test governing the con *253 stitutionality of vehicle searches incident to arrest. Ante at 239-40. Under this test, a Gant evidence search is “incident to arrest” and thus constitutionally permissible even where the search precedes the arrest for the offense at issue and even where it is clear the officers did not intend to arrest the suspect. Ante at 239-40. Because Ms. Gibbs was ultimately arrested, the majority concludes, Officer Brown’s search of the car was a permissible search incident to arrest, even though it was doubtful Officer Brown intended to arrest Ms. Gibbs before she found the gun.
The majority justifies this reading of Gant—which neither party fairly anticipated would be the basis for resolving this case and which neither party meaningfully briefed[1]—largely on the ground that it has not found a ease holding to the contrary. Ante at 239. That no court has held to the contrary, however, cannot justify crafting a new Gant rule that flouts the very premise of Gant and that transforms the search-incident-to-arrest exception into a search-incident-to-probable-cause-to-arrest exception to the warrant requirement. Such an exception, neither specifically established nor well delineated, cannot be squared with Supreme Court precedent or the Fourth Amendment.
L
Arizona v. Gant is the beginning and end of the majority’s analysis—specifically, the exception to the warrant requirement Gant recognizes in circumstances where officers stop a vehicle, arrest its occupant, and search the car for evidence of the offense of arrest. Given its reliance on Gant, then, the majority opinion .is striking in two ways: (1) in the extent to which the opinion, by upholding what amounts to an investigatory search that cannot be justified by the rationales underlying the exception to the warrant requirement it is invoking, repeats the same kind of mistake the Supreme Court in Gant sought to stop lower courts from making, and (2) in -the extent to which the majority must stray from the very precepts of Gant’s vehicle exception to apply it to the facts of this case.
In Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), the Supreme Court set out to address a problem in Fourth Amendment doctrine that stemmed from its decision in New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). In Belton, the Court applied Chimel to the automobile context and held that when the police have lawfully arrested a recent occupant of a car they may search the passenger compartment “as a contemporaneous incident of that arrest.” Id. at 460, 101 S.Ct. 2860. Applying- the principles of Chimel, the Court predicated its decision on the “generalization” that articles in the passenger compartment “are in fact generally, even if not inevitably, within ‘the area into which an arrestee might reach in order to grab a weapon or evidentiary items,’ ” Id. (quoting Chimel, 395 U.S. at 763, 89 S.Ct. 2034). Although the Court in Belton cautioned that its holding “in no way alter[ed] the fundamental principles established in the Chimel case, regarding the basic scope of searches incident to lawful custodial arrests,” id. atm..3, the Court in Gant acknowledged .that in practice Belton searches had come to exceed their permissible scope under Chimel and were being conducted solely for investigative purposes, Gant, 556 U.S. at 341-43, 129 S.Ct. 1710. On this expansive reading of Belton, *254 vehicle searches would be authorized incident to every recent occupant’s arrest even if the passenger compartment were not in the arrestee’s reach at the time of the search;[2] Id. at 343, 129 S.Ct. 1710. The lower courts, in construing Belton so broadly, were “treat[ing] the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception justified by the twin rationales of Chimel.” Id. at 342, 129 S.Ct. 1710 (quoting Thornton, 541 U.S. at 624, 124 S.Ct. 2127 (O’Connor, J., concurring in part)).
In seeking to curtail these investigative searches under Belton, the Supreme Court in Gant began by reaffirming the axiom that a warrantless search is “per se unreasonable” absent justification under one of the “few specifically established and well-delineated exceptions” to the warrant requirement. Id. at 338, 129 S.Ct. 1710 (quoting Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). One such exception, established by Chimel, is for searches of a suspect that are incident to the suspect’s arrest and that are intended to ensure that the suspect does not have the ability to access weapons or destroy evidence. Id. (citing Chimel, 395 U.S. at 763, 89 S.Ct. 2034). The Gant Court held that this Chimel exception, which had been impermissibly broadened for vehicle searches under Belton, authorized the search of a car incident to a recent occupant’s arrest “only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.” Id. at 343, 129 S.Ct. 1710. With this holding, the Court made clear that Chimel cannot be construed 'to authorize the' investigative vehicle searches then being conducted under Belton. Id. at 347, 129 S.Ct. 1710 (“Construing Belton broadly to allow vehicle searches incident to any arrest would serve no purpose except to provide a police entitlement, and it is anathema to the Fourth Amendment to permit a warrantless search on that basis.”). The Court also held that separate and apart from Chimel’s two traditional justifications for the warrant exception, “circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is ‘reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.’ ” Id. at 343, 129 S.Ct. 1710 (quoting Thornton, 541 U.S. at 632, 124 S.Ct. 2127 (Scalia, J., concurring)).
The Gant Court then applied Chimel and the new vehicle exception to the facts of the case, in which Mr.. Gant, after getting out of a parked car, was arrested for driving with a suspended license, handcuffed, and placed in the back seat of a police cruiser before officers searched his car and found a gun and cocaine. Id. at 336, 129 S.Ct. 1710. In the Court’s view, the officers’ search was unreasonable. Id. at 344, 129 S.Ct. 1710. The two Chimel rationales for a search incident to arrest did not apply because Mr. Gant was handcuffed and secured in the back of a police car. Id. The rationale underlying the vehicle exception also did not apply, as there was no chance of finding evidence of the “crime of arrest”—driving without a license—in Mr. Gant’s car. Id.
No one here disputes that the police had probable cause to make an arrest for possession of an open container of alcohol (POCA). It is also undisputed that at the time of the search the police had not arrested Ms. Gibbs for POCA or for any other crime. Yet unlike in Gant itself, *255 which explicitly allows only a search of a car for evidence “incident to a lawful arrest” for a “crime of arrest,” 556 U.S. at 343, 129 S.Ct. 1710 (emphasis added), the majority concludes that a Gant car search has a broader investigatory rationale that is implicated simply by probable cause to believe the suspect has committed an arrestable offense, not by the fact of arrest itself.
At the outset, the argument for expanding the Gant vehicle exception to searches incident to probable cause to arrest forgets the fundamental context in which Gant arose. The Supreme Court in Gant was intent on reining in, the purely investigative searches that had been occurring under Belton, and to that end the Court expressly rejected the notion of a “police entitlement” to search a car whenever a recent occupant has been arrested. Gant, 556 U.S. at 342, 129 S.Ct. 1710 (citation omitted). By permitting a search of the vehicle incident to probable cause to arrest as part of a Gant vehicle search, the majority interprets Gant as authorizing law enforcement to conduct a broad investigatory search of the vehicle before making a decision about whether to arrest. This reading of Gant eviscerates the limits the Court sought to impose on Belton car searches, and in fact would give the police more latitude to search than they had under lower courts’ pre-Gant reading of Bel-ton, which authorized a search incident to arrest only if there had been “a lawful custodial arrest” and the search was “a contemporaneous incident of that arrest.” Belton, 453 U.S. at 460, 101 S.Ct. 2860. We cannot fairly read Gant as professing to scale back Belton’s investigatory searches while at the same time authorizing a search-incident-to-probable-cause-to-arrest exception that by definition invites such investigatory searches.
The majority’s reading of Gant also ignores the principles underlying the vehicle exception,, including, in particular, the exception’s textual origins in Justice- Scalia’s concurrence in Thornton, Although this exception “d[id] not follow from Chimel,” Gant, 556 U.S. at 343, 129 S.Ct. 1710, the Court made clear that it was still a category of search incident to arrest, one whose rationale—securing offense-related evidence that might be found in the vehicle— is informed by the same concerns as those that inform the evidence-preservation rationale underlying Chimel. Like the traditional Chimel exception, then, this Gant vehicle search was in no way intended to authorize the type of open-ended investigative searches of which the Gant Court expressly disapproved in curbing Belton’s excesses. Rather, the Gant search was conceived as a narrow exception that would allow the police to search a ear for additional evidence of the crime for which the arrestee will be charged. This search was designed only to address “circumstances unique to the vehicle context”—a car that could be driven away from the scene with relevant evidence still inside. See id.; Wyoming v. Houghton, 526 U.S. 295, 304, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999) (noting that “in all car-search cases, the ‘ready mobility’ of an automobile creates a risk that the evidence or contraband will be permanently lost while a warrant is obtained”).
The language in Gant adopting this vehicle exception was taken from Justice Scalia’s concurrence in Thornton, 541 U.S. at 632, 124 S.Ct. 2127. In Justice Scalia’s view, even in the absence of Chimel-like concerns, officers should be able to search a vehicle for evidence of a crime of arrest. On the facts of Thornton, where the police arrested Mr. Thornton on narcotics charges after finding marijuana and cocaine on his body in a lawful patdown, officers should also have been able to *256 search his car for drugs, even though he was handcuffed and seated in a patrol car, with no access to weapons and no way of destroying any evidence.
The reasons Justice Scalia gave for this position had everything to do with the fact of arrest. He made clear that the position was not novel or radical, but merely a reflection of the search-incident-to-arrest exception that existed at common law. Thornton, 541 U.S. at 629, 124 S.Ct. 2127. He cited pre-Chimel cases from 1914 through 1950 in which the Court had approved of searches for evidence “relevant to the crime for which the suspect had been arrested.” Id. In every one of these cases, a suspect had been formally arrested.[3] Justice Scalia then quoted at length an 1872 common law treatise discussing the reasons for allowing such searches, calling such reasoning “typical”:
The officer who arrests, a man on a criminal charge should consider the nature of the charge; and, if he finds about the prisoner’s person, or otherwise-in his possession, either goods or moneys which there is reason to believe are connected with the supposed crime as its fruits, or as the instruments with which it was committed, or as- directly furnishing evidence relating to the transaction, -he may take the same, and hold them to be disposed of as the court may direct.
Id. at 630 (citing 1 J. Bishop, Criminal Procedure § 211, p. 127 (2d ed. 1872)). “There is nothing irrational,” Justice Sca-lia added, “about broader police authority to search for evidence when and where the perpetrator of the crime is lawfully arrested,” and it is this “fact of prior lawful arrest” that “distinguishes the arrestee from society at large, and distinguishes a search for evidence of his crime from general rummaging.” Id. He even appeared to suggest that, the police might in some sense be obligated to search for such evidence relevant to a charge of arrest. See id. at 632, 124 S.Ct. 2127 (quoting Smith v. Jerome, 47 Misc. 22, 93 N.Y.S. 202, 203 (Sup.Ct.1905) (“This right and duty of search and seizure extend, however, only to articles which furnish evidence against the accused.” (emphasis added))).
Even as he endorsed these searches, Justice Scalia acknowledged that an evidence-gathering justification for a search is “far less compelling” than a Chimel rationale, where “officer safety or imminent evidence concealment or destruction is at issue” and where “officers should not have to make fine judgments in the heat of the moment.” Id. at 632, 124 S.Ct. 2127. Justice Scalia therefore indicated that the exception should be carefully circumscribed to apply only to “relevant” evidence against the accused, and that the search of Mr. Thornton’s car was legal because Mr. Thornton “was lawfully arrested for a drug offense” and the police had reason “to believe that further contraband or similar evidence relevant to the crime for which he had been arrested might be found in the vehicle from which he had just alighted and which was still within his vicinity at the time of arrest.” Id. (emphasis added).
The reasoning of Justice Scalia’s concurrence, upon which Gant exclusively relied in adopting an evidence-gathering search-incident-to-arrest exception, for the most part does not apply in the absence of a *257 formal arrest. First, while a person who has been formally arrested undoubtedly has a lowered expectation of privacy in his body and effects, see, e.g., Maryland v. King, - U.S. -, 133 S.Ct. 1958, 1978, 186 L.Ed.2d 1 (2013), the government cites no case, and we are aware of none, suggesting that a person the police have probable cause to believe committed an offense, but who has not yet been subject to arrest for that offense, has a. lowered expectation of privacy on that basis .alone.[4] Second, Justice Scalia’s concurrence—-and the common law exception, it resurrects—makes reference to the right and duty of officers to collect relevant evidence against the accused. This right and duty arise presumably because formal arrest reflects an anticipation of formal charges and a formal criminal proceeding against the suspect. The very concepts of “relevant evidence” and the “accused” presuppose a criminal proceeding of some kind. See, e.g., Am. Tobacco Co. v. United States, 328 U.S. 781, 787, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946) (“The verdict in a criminal case is sustained only when there is ‘relevant evidence from which the jury could properly find or infer, beyond a reasonable doubt,’ that the accused is guilty.” (quoting Mortensen v. United States, 322 U.S. 369, 374, 64 S.Ct. 1037, 88 L.Ed. 1331 (1944))); Wheeler v. United States, 930 A.2d 232, 249 (D.C.2007) (in cases “where the evidence requires careful weighing, the need for unfettered jury adjudication is at its zenith, and requires that each juror have considered all relevant evidence and be firmly convinced that there is no reasonable doubt as to the accused’s guilt”). The duty to collect relevant evidence against a person who officers have reason to believe will be formally accused of a crime has no meaningful application in a scenario in which officers objectively have probable cause to arrest but have chosen not to do so. Any argument that the common law would accommodate' the type of search conducted in Mr. Lewis’s case is in no way suggested by Gant, by the concurrence in Thornton, or by the cases and treatises Justice Scalia relied upon. To the contrary, these authorities all suggest that so novel an argument is at odds with the rationales underlying the common law exception.
At bottom, the majority’s argument under Gant—that a search of a car incident to probable cause to arrest is justified because the police might arrest the person—appears no stronger than the. argument the Supreme Court rejected in Gant: that a search of a car incident to arrest under Chimel is justified even when the arrestee is already secured because the police might have conducted the search earlier. Both arguments assume that, “one way or another,. the search must take place.” Thornton, 541 U.S. at 627, 124 S.Ct. 2127. Yet both arguments overlook the fact that searching without a warrant “is not the Government’s right; it is an exception—justified by necessity—to a rule that would otherwise render the search unlawful.” Id.
*258 II.
The majority justifies allowing pre-ar-rest Gant vehicle searches incident to arrest on two main grounds: (1) that no Supreme Court precedent explicitly states the opposite—that pre-arrest Gant searches are impermissible—and (2) that requiring a formal arrest to be either completed or under way would contradict the Supreme Court’s opinion in Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). Ante at 240-41, 241-42. But these justifications, in turn get the warrant requirement backwards and derive from a strained reading of Rawlings that disregards Supreme Court precedent predicating the search-incident-to-arrest exception—whether under Chimel or Gant—on a formal arrest or perhaps, in rare circumstances like in Rawlings, an imminent and inevitable arrest.[5]
That no Supreme Court case explicitly holds that pre-arrest Gant searches are unconstitutional is true as far as it goes. But the Fourth Amendment does not give the police unfettered power to conduct searches and seizures unless judges tell them hot to, and this court is not creating policing policy on a blank slate. Rather, we start from the premise that a warrantless search is per se unreasonable, subject only to exceptions that have been defined clearly by the Supreme Court. See Coolidge v. New Hampshire, 403 U.S. 443, 455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (general warrant requirement is “subject only to a few specifically established and well delineated exceptions ... [that] are jealously and carefully drawn” (internal quotation marks and citations omitted)). With the exception of Rawlings, the Supreme Court’s cases on the search-incident-to-arrest exceptions of Chimel and Gant involve circumstances in which a formal arrest was completed and explicitly state the exception in terms' of a search incident to a lawful arrest.[6] In the absence of precedent establishing a broader exception, the war-rantless search of Mr. Lewis’s car is presumed unreasonable.[7]
With respect to the majority’s second justification for allowing pre-arrest searches, requiring that a completed or underway arrest precede a Chimel search is entirely consistent with Rawlings. In Rawlings, six police officers entered a house with an arrest warrant for a suspect and, not finding the suspect but spotting marijuana seed, detained the house’s occupants, including Mr. Rawlings, for forty-five minutes, while two of the officers left to get a search warrant for the house. 448 U.S. at 100, 100 S.Ct. 2556. Later, the occupants were read their Miranda *259 rights[8] and a woman was ordered to empty her purse. Id. at 100-01, 100 S.Ct. 2556. When it became clear that the purse contained drugs, the woman turned to Mr. Rawlings and told him “to take what was his.” Id. at 101, 100 S.Ct. 2556. Mr. Rawl-ings confessed that the drugs belonged to him, and the officers searched his person, finding $4,500 in cash and a knife, and then immediately placed him under formal arrest. Id. In three sentences at the very end of its opinion, after addressing at length whether Mr. Rawlings had standing to challenge the search of his companion’s purse, the Court rejected Mr. Rawlings’s contention' that the search of his person was not incident to a valid arrest, stating that “[wjhere the formal arrest follow[s] quickly on the heels of the challenged search of petitioner’s person, we do not believe it particularly important that the search preceded the arrest rather than vice versa.” Id. at 111, 100 S.Ct. 2556.
This language in Rawlings reflects a commonsense acknowledgment that where a formal arrest is under way at the time a suspect’s wingspan is searched, as it surely was on the facts of Rawlings, a hypertech-nical insistence upon excluding evidence uncovered in such a search would unnecessarily constrain the discretion of law enforcement. The majority casts this reading of Rawlings as reflecting an “implicit critique” of the case, ante at 246, but the opposite is true. Rawlings reaches the right result. The objective circumstances there—Mr. Rawlings was detained by four police officers for forty-five minutes while two other officers went to get a warrant— were such that there was never any question that Mr. Rawlings was going to be arrested at the time he was searched, and given that fact, the Court sensibly did not believe it “particularly important” that the search preceded the “formal arrest,” because such an arrest had already been set in motion. Read in light of these facts, Rawlings cannot be construed as endorsing pre-arrest Chimel searches where an arrest is not at least under way. See Armour & Co. v. Wantock, 323 U.S. 126, 132-33, 65 S.Ct. 165, 89 L.Ed. 118 (1944) (“re-mindfing] counsel that words of [the Court’s] opinions are to be read in the light of the facts of the case under discussion” and that “[g]eneral expressions transposed to other facts are often misleading”).[9] And while the majority ‘sug *260 gests that it is unclear what such an “underway” arrest means, ante at 242-43, the meaning is not ambiguous. If the arrest has not begun, there is no reasonable dispute that it is about to begin. It is imminent and inevitable. The concept of an “underway” arrest distills, in a word, the concern at the end of Rawlings.
In any event, Ms. Gibbs’s arrest was not under way—under any definition of that term—when the police searched Mr. Lewis’s car. Officer Alto decided not to arrest Ms. Gibbs after confiscating the open bottle of tequila, and so Ms. Gibbs remained sitting unrestrained on the bumper of the police cruiser while Officer Brown searched the vehicle to see what other contraband she might find. Unlike in Rawlings, the circumstances here showed that Ms. Gibbs was unlikely to be arrested before Officer Brown found the gun at the end of her search. Officer Brown’s investigatory search of the vehicle, with no arrest of Ms. Gibbs imminent or inevitable, bears little resemblance to the search incident to an underway arrest in Rawlings.
Of course, this case involves a Gant vehicle search, and it is not clear that Rawlings applies at all in this context. For his part, Mr. Lewis argues that while concerns for officer safety may sometimes justify pre-arrest Chimel searches when the arrest is under way, those concerns are' not present when the police conduct Gant vehicle searches. It may make sense not to stand on formalities when an arrest is already under way and there is a real danger that the suspect might gain access to a weapon or destroy evidence, but the same beat-him-to-the-draw logic does not apply so clearly to searches of vehicles for evidence relevant to a crime of arrest. The majority’s only direct response to this point—that other courts have applied Rawlings to Gant evidence searches, ante at 242-43—is less than compelling.
Even if the Rawlings logic does apply to pre-arrest Gant searches, the resulting rule should then be that Gant vehicle searches incident to arrest, are lawful only where a formal arrest is completed plunder way. But the majority rejects this modest approach and suggests instead that under Rawlings, Gant vehicle searches should be. permissible whenever officers have probable cause to arrest for an offense and where the vehicle may contain evidence of that offense (along with the majority’s other conditions).
Recognizing that the Supreme Court in Rawlings “did not explain [the] reasons” of its fleeting analysis, the majority looks to other state court decisions and gleans from them three policy rationales that it says underlie Rawlings and that support a search-incident-to-probable-cause-to-arrest approach to Gant. Ante at 240-41, 243. But imported' policy rationales cannot create a well-delineated exception to the warrant requirement where none exists. And in any event, the majority’s policy grounds for a pre-arrest Gant exception fall short on the merits.
As its first policy rationale, the majority asserts that a pre-arrest Gant search based on probable cause might benefit an innocent suspect if it negates such probable cause and leads to a decision not to arrest. Under a bright-line approach requiring a formal arrest to justify a search incident to arrest, the argument goes, the police will simply arrest more people, including some people they may not have *261 arrested had they searched them first and found nothing incriminating..
But determining how a search-incident-to-probable-cause-to-arrest rule would affect innocent suspects involves & series of complex empirical questions. The precarious assumptions that emerge from such an inquiry are not persuasive grounds for engaging in an otherwise counterintuitive interpretation of Supreme Court precedent to allow a search incident to arrest in the absence of an arrest. Indeed, while the majority cites State v. Overby, 590 N.W.2d 703, 706 (N.D.1999), for the proposition that “if the person searched is innocent and the search convinces the officer that his reasonable belief to the contrary is erroneous, it is to the advantage of the person searched not to be arrested,” ante at 240, the Overby court was itself divided in that regard. Chief Justice VandeWalle, ■joined by another justice, wrote that “[t]he insult remains,” adding, “[mjore importantly,” that
the reality is that an officer who is suspicious may be subconsciously tempted to conduct a search before making the arrest with the expectation or hope that the search will produce such irrefutable evidence of the commission of a crime that a lack of probable cause to arrest prior to the search will be overlooked, or such suspicion as did exist will be viewed more favorably in light of the evidence discovered in the search if, in fact, there is evidence discovered.
Id. at 708 (VandeWalle, C.J., concurring specially).
The majority’s second policy rationale, that a pre-arrest Gant search adds no further intrusion where an arrest is already .“inevitable,” ante at 24CM4, 242-43, may well be true. The difficulty, however, is in determining when an arrest is truly inevitable. Sometimes a set of unusual facts, like those in Rawlings, will objectively indicate the inevitability of an arrest at the time of a pre-arrest search. An approach. that attempts to extract from Rawlings and Gant . an administrable rule—that a search incident to arrest is legal only in the face of a completed or “underway” arrest—provides a workable proxy for inevitability. The majority’s proposed conditions to the legality of a pre-arrest Gant search, in contrast, are not proxies for the inevitability of' an arrest. The circumstances of the five-factor test— that officers have probable cause to arrest, that the suspect has just come from a car, that the police have reason to believe the car might contain evidence of the arrestable, offense, that the police have not released the. suspect or issued a citation, and that the suspect’s arrest for the offense follows quickly on the heels of the search—in np way imply that the suspect inevitably would have been arrested for that offense. Indeed, there are strong indications that the officers had no intent to arrest Mr. Lewis or Ms. Gibbs for POCA, at least before their pre-arrest search uncovered evidence of more serious crimes.
As to the majority’s final policy rationale for pre-arrest Gant searches, courts do appear “reluctant to micromanage the precise order in which officers who have probable cause to arrest conduct searches and arrests” in the context of a Chimel search where, as in Rawlings, the arrest is under way. Ante at 240. And the majority’s citation on this point, Anderson v. State, 78 Md.App. 471, 553 A.2d 1296 (Md.Ct.Spec. App.1989), says nothing beyond that unremarkable truism. See id. (noting that it would be an “absurdity” to require officers in a “combat situation” right before arrest to “lose critical seconds,” and lose the chance to “beat[] his opponent to the draw,” in order to “say the operative words, you are under arrest”).[10] Requiring *262 that an arrest be completed or under way is entirely consistent with judges’ concerns about micromanaging police. This approach does not seek to micromanage the conduct of officers acting in what are often ■stressful situations, but rather to force these officers to verify at the front end that their searches are tethered to an actual arrest supported by probable cause, rather than mere general rummaging that may or may not lead to an arrest depending on what the officers find. And because arrests consume law enforcement resources, predicating a search incident to arrest upon an actual arrest has the added benefit of prompting police officers to think more critically about whether the offense for which probable cause exists— and which provides the basis for the search—is- serious enough to justify the costs associated with an arrest. Such an approach could also foster trust and respect between police officers and community members.[11]
The majority’s test, by contrast, asks almost nothing of police officers before they conduct a search of a car incident to arrest, and relies instead on a judicial officer’s after-the-fact determination of probable cause to ensure the lawfulness of the search—a determination that will of course be made only if the suspect is arrested. Requiring an underway or completed arrest—and accordingly a probable-cause-to-arrest determination—before searching a car provides an additional safeguard against abuses in one of the few circumstances where we allow the police to search a vehicle “without prior approval by judge or magistrate” in' the form of a search warrant. See Coolidge, 403 U.S. at 454, 91 S.Ct. 2022; see also Riley v. California, - U.S. -, 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014) (recognizing that “a warrant ensures that the inferences to support a search are ‘drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime’ ” (quoting Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948))).
It is true that the conditions the majority places on pre-arrest searches avert some of the possible abuses. An officer could not, for example, simply pull over a motorist for an extralegal reason (such as *263 his race) on the basis of probable cause for an arrestable but pretextual traffic offense like reckless driving, search his car for evidence of some other crime, and expect to have the search upheld. But despite the majority’s insistence that its test will not lead to abuses because Gant evidence searches must rest on “particularized suspicion,” ante at 244, 244-45, 249-51, the majority’s approach does nothing, to stop officers from searching a car if the arrestable but pretextual offense is something like POCA, where evidence of the offense may well be in the car, but where officers have no intent tó arrest for the minor offense if they fail to find evidence of other crimes. In such a case, the fact that there is particularized suspicion to believe the car contains evidence of that offense provides no comfort to a citizen whom the police want to stop and search for evidence of other unrelated crimes, using POCA as a pretext.[12] See Wayne R. LaFave, Search and Seizure § 5.4 (a) (5th ed. 2012). Under the majority’s approach, moreover, an officer who does not intend to arrest but conducts a search anyway will inevitably look for evidence that will firm up probable cause or justify an arrest on grounds other than those that formed the basis of the probable cause—a consequence that) besides defying the rationale of a Gant search, will effectively lower, the-bar. to probable cause and make investigative searches more common.[13]
These concerns are by no means hypothetical and carry with them serious implications for disparate enforcement in policing practices.[14] By allowing the police to *264 conduct a search of a car in the absence of an underway or completed arrest based on probable cause to believe a specific offense has been committed, the majority’s rule dispenses with an important mechanism— an arrest—that makes it harder for officers to target individuals because of race or ethnicity and conduct wide-ranging investigatory searches of their vehicles even though the officers have no intent to arrest at the start of the search. An arrest requirement does just the. opposite: it ties permissible police conduct to the fact of an arrest, authorizing a Gant search of the vehicle only if “evidence relevant to th[at] crime of arrest” might reasonably be found inside. Gant, 556 U.S. at 343, 129 S.Ct. 1710. In light of the well-publicized concerns about racial profiling in some major cities, see, e.g., Floyd v. City of New York, 959 F.Supp.2d 540 (S.D.N.Y.2013), keeping the focus on the arrest properly mitigates a risk that the majority’s approach actually invites—that officers will use an arrestable offense "as a pretext to rummage through the cars of people from marginalized communities in order to look for evidence of other crimes.
III.
In its final argument in favor of broadly construing Rawlings to implicitly allow pre-arrest Gant, searches, the majority contends that any alternative approach, such as a rule that Gant searches are permissible only if a formal arrest is completed o.r under way, would inevitably require an inquiry into the subjective motivations of the arresting officers—an inquiry the Supreme Court has discouraged in cases like Whren v. United States, 517 U.S. 806, 116 S.Ct 1769, 135 L.Ed.2d 89 (1996). See ante at 243-44. This argument pervades the section of the majority’s opinion defending its conclusion that a pre-arrest Gant vehicle search is permissible even where the officers had no intention of executing a formal arrest.
As a , threshold matter, the approach most consistent with Gant and with Justice Scalia’s Thornton concurrence—a bright-line rule that Gant vehicle searches are impermissible absent a completed formal arrest—would require no inquiry into the subjective intent of the officers. It is solely by virtue of the majority’s insistence that the Rawlings logic apply to Gant searches that this question of subjective inquiry arises at all.
And in any event, the majority misapprehends Supreme Court precedent like Whren and Ashcroft v. Al-Kidd, 563 U.S. 731, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011), in insisting that the Court’s “repeated[] rejection]” of “a subjective approach,” ante at 243 (quoting Fernandez v. California, — U.S. -, 134 S.Ct. 1126, 1134, 188 L.Ed.2d 25 (2014)), bolsters the conclusion that pre-arrest searches are permissible where officers subjectively do not intend to arrest. As the Supreme Court made clear in Florida v. Jardines, “those cases merely hold that a stop or search that is objectively reasonable is not vitiated by the fact that the officer’s real *265 reason for making the stop or search has nothing to do with the validating reason.” — U.S. —, 133 S.Ct. 1409, 1416, 185 L.Ed.2d 495 (2013). Thus .in Whren, the Court held that a traffic stop based upon probable cause for a traffic offense, even where the officer might have an invidious subjective motivation for the stop, is lawful under the Fourth Amendment. Whren, 517 U.S. at 813, 116 S.Ct. 1769 (“Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.”); see also Jardines, 133 S.Ct. at 1416 (“defendant will not be heard to complain that although he was speeding the officer’s real reason for the stop was racial harassment”); Devenpeck v. Alford, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) (“arresting officer’s state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause”); Reid, 26 N.E.3d at 240 (“[Whren and Devenpeck] hold that a stop or arrest is valid where it is supported by the necessary level of suspicion or probable cause, whatever the actual motive for the officer’s action.”).
But there is a difference between a defendant’s delving into an officer’s subjective intent to invalidate a search that is clearly otherwise legal under objective, existing warrant exceptions[15] and a defendant’s insisting that, if the government wishes to deviate from objective, existing warrant exceptions, it should do so only where that subjective intent aligns with the rationales underlying such existing exceptions. In a Whren-like situation, the government might reasonably be concerned that a valid traffic stop, objectively justified under well-established Supreme Court precedent, would be invalidated because of the vagaries of trial courts’ credibility assessments about officers’ subjective intentions in stopping a motorist. But here, the search of Mr. Lewis’s vehicle was not objectively justified under existing and well-established exceptions to the warrant requirement, and thus the concerns expressed in Whren and its progeny do not apply with equal force. It is the government, not the defense, that hopes to persuade the court to deviate from the traditional requirement of a completed formal arrest to justify a search.[16] To do so, the government should have to show that the arrest was under way, even if that requires a subjective inquiry into officer intent.
Any subjective inquiry into an officer’s intent to arrest, moreover, would rarely require the type of extensive examination into an officer’s state of mind that the Supreme Court has generally guarded against in the Fourth Amendment context.[17] In the vast majority of cases involv *266 ing searches incident to arrest, that an officer subjectively intended to arrest a suspect will be readily discernible based on the objective circumstances of the encounter. See, e.g., Jardines, 133 S.Ct. at 1416-17 (analyzing whether officers had “a purpose to conduct a search” based on what “their behavior objectively reveals”); Devenpeck, 543 U.S. at 154, 125 S.Ct. 588 (arresting officer’s “subjective intent is always determined by objective means”). Before Mr. Rawlings was “placed [] under formal arrest,” for example, he was detained for forty-five minutes, was administered Miranda warnings, and had confessed to possessing drugs found in a companion’s purse—circumstances objectively indicating the officers’ intent to arrest him. See Rawlings, 448 U.S. at 100-01, 100 S.Ct. 2556. The officers’ intent to arrest was similarly evident in Millet v. United States, 977 A.2d 932 (D.C.2009), where, by the time the police searched Mr. Millet, officers had already lawfully recovered a bag of marijuana from his car, had arrested Mr. Fountain, the driver, for driving under the influence of marijuana, and had “told Millet and Fountain that they would both be charged in connection with the marijuana found in the bag.” Id. at 934.[18]
Of course, discerning an officer’s subjective intent to arrest may in some cases prove less clear-cut, and officers may be understandably reluctant to subject themselves and the validity of their searches and seizures to the uncertainty of trial courts’ credibility determinations. In such instances, officers have a straightforward and objectively verifiable alternative available to them: they can make the arrest.
IV.
The rule the majority crafts for evaluating the constitutional validity of a pre-arrest Gant vehicle search is ostensibly narrow, but its five-part test cannot mask what is, at bottom, a profound departure from the essential moorings of the Supreme Court’s well-established exceptions to the warrant requirement for both Chi-mel-style searches incident to arrest and Gant vehicle searches alike. The majority opinion is no mere application of Gant to a *267 new set of facts. On the contrary, in upholding the pre-arrest search in this case under Gant even in the absence of any indication the police intended to arrest Ms. Gibbs before the search, the majority spurns Justice Scalia’s unmistakable view that such an exception to the warrant requirement is justified by the “fact of prior lawful arrest.” 541 U.S. at 630, 124 S.Ct. 2127. The weakness of the majority’s holding in this regard is underscored by its unsupportable and largely unexplained contention that the Gant Court, while expressly adopting the exception Justice Sca-lia proposed in Thornton, nevertheless rejected its analytic roots.
There are undeniable costs to expanding existing exceptions to the warrant requirement beyond their well-established bounds. Most notably, investigative searches will become more commonplace. Such searches, as the Supreme Court has repeatedly emphasized, “implicate! ] the central concern underlying the Fourth Amendment—the concern about giving police officers unbridled discretion to rummage at will among a person’s private effects.” Gant, 556 U.S. at 345, 129 S.Ct. 1710. With its new anomalous conception of the Gant vehicle search, the majority opinion downplays this central concern, discarding a key limiting principle in the foundation of Gant itself that is designed to address precisely this problem—“the fact of prior lawful arrest.” Thornton, 541 U.S. at 630, 124 S.Ct. 2127.
I respectfully dissent.

. In their briefs as in their respective statements of the issue presented for review, the parties focus on whether a Fourth Amendment search incident to arrest requires the government to prove more than just probable cause to arrest at the time of the search.

. As Justice Scalia observed in his Thornton concurrence, in some cases lower courts had upheld searches under Belton "even when ... the handcuffed arrestee has already left the scene.” Thornton, 541 U.S. at 628, 124 S.Ct. 2127.

. These cases include United States v. Rabinowitz, 339 U.S. 56, 58, 60-64, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Harris v. United States, 331 U.S, 145, 148, 151-52, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); Marron v. United States, 275 U.S. 192, 198-99, 48 S.Ct. 74, 72 L.Ed. 231 (1927); Agnello v. United States, 269 U.S. 20, 30-31, 46 S.Ct. 4, 70 L.Ed. 145 (1925); Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct 341, 58 L.Ed. 652 (1914).

. In a footnote, the majority asserts that un- ' like Justice Scalia's statement in Thornton that the "fact of prior lawful arrest distinguishes the arrestee from society at large,” Gant made reference only to searches as being incident to "lawful arrest,” omitting the word "prior.” Ante at 241-42 note 3. But Gant in no way purported to augment Justice Scalia’s reasoning, much less to radically alter it by authorizing an evidence search incident to arrest that precedes the arrest, Gant's discussion of Justice Scalia's approach was brief and unequivocal; it adopted the approach and moved on. Reading Gant's omission of “prior” in this way also appears at odds with the Gant Court's purpose of narrowing the search-incident-to-arrest exception to address the problems Belton engendered. If the Court had also intended to broaden the exception by authorizing a search without the predicate of an arrest, it would have said so.

. Contesting the notion that Rawlings presents "rare circumstances," the majority argues that "the issue presented in Rawlings arises with great frequency” and that "[mjany published appellate decisions apply Rawlings to uphold searches conducted incident to, but before, arrest.” Ante at 247. But the fact that lower courts have cited Rawlings in trying to justify a search-incident-to-probable-cause-to-arrest rule does not mean that the facts of Rawlings—where officers were in the process of arresting the suspect but had not yet formally done so—arise with great frequency.

. The footnote from Gant that the majority cites in suggesting that the Court “understood and intended that Rawlings would continue to permit searches incident to arrest to be conducted before the formal arrest,” ante at 248, makes clear, consistent with Rawlings, that certain pre-arrest searches would be permissible in the "rare case” where an officer has not "fully effectuate[d] an arrest." Gant, 556 U.S. at 343 n. 4, 129 S.Ct. 1710.

.That Gant was decided so recently also blunts the force of the majority’s argument that pre-arrest Gant vehicle searches are permissible because the Supreme Court has never held them unconstitutional.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. In suggesting otherwise, the majority observes that Rawlings “relied on a number of decisions holding that a search incident to arrest can lawfully precede the arrest.” Ante at 246. But the cases cited in Rawlings do not endorse a search-incident-to-probable-cause-to-arrest exception to the warrant requirement, and they were wrongly decided if they do. The officers involved in those cases were conducting the searches with a conditional intent to arrest for the offense for which they had probable cause if the searches were fruitful. See, e.g., United States v. Brown, 463 F.2d 949, 950 (D.C.Cir.1972) (where the officer’s search was clearly, intended to confirm or dispel that the envelope "protruding from appellant’s shirt pocket” contained narcotics— as the appellant's eyes were "glassy,” he was behaving suspiciously in an area where the officer had “frequently observed" narcotics transactions, and the envelope was “of the type in which [the officer] had found narcotics on previous occasions”—the court upheld the search even though the suspect had “not formally been placed under arrest” at the time the officer seized the envelope); Bailey v. United States, 389 F.2d 305, 307-09 (D.C.Cir.1967) (holding that where the government conceded that "in law the arrest of the car’s [occupants] took place at the time [the officer] approached the car, perhaps with gun drawn, and told appellants to sit still and keep their hands in plain sight,” that officer could, as a search incident to arrest, confiscate a wallet that he saw on the car floor, even though he had not yet conducted the formal arrest). For this reason, and because the circumstances of those. cases triggered no concerns about pre-textual searches, the cases also do not control *260 this case. See Wayne R. LaFave, Search and Seizure § 5.4 (a) (5th ed. 2012) (noting that it is "particularly unsettling” to interpret Rawl-ings to permit pre-arrest searches where there is probable cause to arrest and "when the offense for which pre-search probable cause existed was so trivial that it otherwise would likely have been ignored”).

. The government argues in its brief that mere probable cause to arrest creates a com *262 bustible arrest situation because the suspect will know he is in trouble. In circumstances that are devoid of other objective indications of an intent to arrest, however, it is far from clear that a suspect would realize an officer has probable cause to arrest him. And that saipe logic could be used to justify a search incident to any traffic stop of a vehicle on the theory that reasonable suspicion to stop the vehicle creates a combustible stop situation.

. Cf. U.S. Dep’t of Justice, Investigation of the Baltimore City Police Department 8 (2016), https ://www.justice.gov/opa/file/ ' 883366/download (reporting that "[i]n some cases, [Baltimore City Police Department] supervisors have ordered officers to specifically target African Americans- for stops and arrests,” that "[t]hese failures [in policing] contribute to the large racial disparities in BPD’s enforcement that undermine the community’s trust in the fairness of the police,” and that "BPD leadership has acknowledged that this lack of trust inhibits their ability to forge important community partnerships”); U.S. Dep’t of Justice, Investigation of the Ferguson Police Department 5-6 (2015), https://www. justice.gov/sites/defaul1/files/opa/press-releases/attachments/2015/_03/04/ferguson_ police_departrnent_report.pdf (highlighting "the lack of trust between the Ferguson Police Department and a significant portion of Ferguson’s residents, especially African Americans,” and concluding that this "distrust ... is longstanding and largely attributable to Ferguson’s approach to law enforcement,” which "results in patterns óf unnecessarily aggressive and at times unlawful policing; reinforces the harm of discriminatory stereotypes; discourages a culture of accountability; and neglects community engagement”).

. The government contends that such concerns are unfounded because there is no evidence of abuse in the more than 25 years since Rawlings was issued. As an initial matter, not all courts have construed Rawlings to allow searches incident to probable cause to arrest. See, e.g., People v. Reid, 24 N.Y.3d 615, 2 N.Y.S.3d 409, 26 N.E.3d 237, 239 (2014) ("It is irrelevant that, because probable cause existed, there could have been an arrest without a search. A search must be incident to an actual arrest, not just to probable cause that might have led to an arrest, but did not.”); State v. Funkhouser, 140 Md.App. 696, 782 A.2d 387, 406 (Md.Ct.Spec.App.2001) ("It is axiomatic that a search incident to lawful arrest is absolutely dependent on the fact of an actual arrest.”). And even where courts have so construed Rawlings, we are aware of no data from 1980 to the present indicating the absence of such abuses. Indeed, it is far from clear how such discriminatory pretextual searches would make their way into published judicial decisions in the first place. These searches will receive judicial scrutiny where they fortuitously uncover evidence of a more serious crime and thus lead to an arrest, but will not in the many cases in which the police find nothing of interest.

. See supra note 10.

. See generally, e.g., Complaint, Wilkins v. Maryland State Police, No. 93-468 (D.Md. Feb. 12, 1993), http://www.clearinghouse.ne1/ chDocs/ public/PN-MD-0003-0007.pdf. In this class-action lawsuit, Robert Wilkins, an African-American attorney who now serves as a federal appellate judge, successfully challenged the racial profiling practices of the Maryland State Police after the police base-lessly stopped and detained him and three relatives and searched their car on a highway in Maryland because the police believed they fit the state’s drug courier profile. The litigation exposed the prevalence of pretextual stops and ultimately led to a consent decree in which the Maryland State Police agreed to revise and update its policies and procedures against racial profiling, retrain its troopers on proper traffic stops, develop a Police-Citizen Advisory Committee to address ongoing concerns about racial profiling, as well as take other measures to combat this problem. See Consent Decree, Wilkins v. Maryland State Police, No. 93-468 (D.Md. Apr. 22, 2003), http://www.clearinghouse.net/chDocs/public/PN-MD-0003-0012.pdf; see also Baltimore Report, supra note 11, at 7 (noting that "BPD stopped African-American [pedestrians] three times as often as white residents after controlling for the population of the area in which the stops occurred,” that "African Americans accounted for 82 percent of all BPD vehicle stops, compared to only 60 percent of the driving age population in the City,” and that *264 "BPD searched African Americans more frequently during pedestrian and vehicle stops, even though searches of African Americans were less likely to discover contraband”); Ferguson Report, supra note 11, at 4 ("Data collected by the Ferguson Police Department from 2012 to 2014 shows that African Americans account for 85% of vehicle stops, 90% of citations, and 93% of arrests made by FPD officers, despite comprising only 67% of Ferguson’s population. African Americans ‘ are more than twice as likely as white drivers to be searched during vehicle stops even after controlling for non-race[-]based variables such as the reason the vehicle stop was initiated, but are found in possession of contraband 26% less often than white drivers, suggesting officers are impermissibly considering race as a factor when determining whether to search.”).

. See Brigham City v. Stuart, 547 U.S. 398, 403-06, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (officers’ subjective motivations in entering a house were irrelevant where police were providing assistance under the emergency aid exception to the warrant requirement).

. Counsel for the government actually appeared to concede at oral argument that the subjective intent of the officer will sometimes be relevant to determining the legality of a search when he acknowledged that he would not want the judge to exclude an officer’s testimony that he had made a definite decision to arrest.

. Even if it did, at least one case binding on this court examined an officer’s subjective intent in the form of his trial testimony in concluding that a search was unreasonable under the Fourth Amendment. See White v. United States, 271 F.2d 829, 831 (D.C.Cir.1959) ("According to the officer’s own testimony ... the search did not turn upon an arrest for vagrancy, and to attribute it to such an árrest would be to take an unrealistic view of the evidence. The arrest for vagrancy was incidental to the search, rather than the converse. ... We have more than once excluded evidence obtained by a search which in truth was not incidental to an arrest, but when in *266 fact the arrest was incidental to a search. This is such a case.” (citations omitted)).

. The majority relies heavily on broad statements from cases such as Devenpeck that subjective intent has no place in a Fourth Amendment setting. And yet the Supreme Court has expressly endorsed subjective inquiries into an officer's state of mind in certain Fourth Amendment contexts, including inquiries that seem very similar to the question of an officer’s intent to arrest. In Murray v. United States, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988), for example, the Court held that under the independent source doctrine, an unlawful warrantless entry into a warehouse would not require suppression of evidence obtained during a subsequent warrant-based search of the warehouse if the government could establish (1) that the warrant was based on information independent of what the officers saw during the warrantless entry and (2) that the officers would have sought a warrant even if they had not previously entered the warehouse. Id. at 541-43, 108 S.Ct. 2529; see also id. at 547, 108 S.Ct. 2529 (Marshall, J., dissenting) (stating that the majority opinion in Murray "makes the application of the independent source exception turn entirely on an evaluation of the officers' intent”); United States v. Jadlowe, 628 F.3d 1, 9-10 (1st Cir.2010) (in independent-source case where officer testified that he “would have sought a warrant even had the officers not seen the bricks of cocaine in the garage,” the court explained that the "police officers’ subjective intent to seek a warrant is a factual determination subject to clear error review”); United States v. Restrepo, 966 F.2d 964, 972 (5th Cir.1992) (explaining that "the core judicial inquiry before the district court on remand is a subjective one; whether information gained in the illegal search prompted the officers to seek a warrant to search [the residence]”).